UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00067-FDW

| | |
|---|---|
| DANA C. THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendants. ) | |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 6) and Defendant's Motion for Summary Judgment (Doc. No. 8). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits under 42 U.S.C. § 405(g).[1] For the reasons that follow, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED. Accordingly, the Commissioner's decision is AFFIRMED.

## I. BACKGROUND

The procedural history of this case is undisputed. Dana C. Thomas ("Plaintiff") filed an application for disability and disability insurance benefits on February 22, 2013, alleging disability since January 4, 2012. (Tr. 169.) Plaintiff's application was denied initially on May 24, 2013, (Tr. 100), and at reconsideration on August 13, 2013. (Tr. 108.) Plaintiff filed a request for hearing and on September 30, 2013. (Tr. 116.) Administrative Law Judge Todd D. Jacobson ("ALJ")

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405.

1

conducted the hearing in Charlotte, North Carolina, on June 3, 2015. (Tr. 45.) The ALJ denied Plaintiff's application in a written decision dated July 22, 2015. (Tr. 27.)

In reaching his decision, the ALJ used the five-step sequential evaluation process for the evaluation of claims for disability under the Act. (Tr. 30-39); 20 C.F.R. § 404.1520(a)(4). On step one of the process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 4, 2012, and the date Plaintiff's insured status expired, December 31, 2015. (Tr. 32.) At step two, the ALJ found Plaintiff had the following severe impairments: obesity, congestive heart failure, asthma, myofascial pain syndrome, fibromyalgia, and headache. (Tr. 32.) The ALJ also determined Plaintiff's alleged mental limitations were "no more than mild limitations in activities of daily living, social functioning, and concentration, pace or persistence." (Tr. 32.) At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings. (Tr. 33.)

The ALJ determined Plaintiff, despite her impairments, could perform light work as defined in 20 C.F.R. § 404.1567(b) and explained her residual functional capacity ("RFC") as follows:

> I find the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to jobs that permit the option to alternate between sitting and standing in one hour intervals; she is limited to occasional climbing of ladders, ropes and scaffolds; frequent, but not constant, climbing of stairs, balancing, stooping, crouching, kneeling, and crawling; no concentrated exposure to hazards such as moving machinery or unprotected heights; no concentrated exposure to humidity, heat, vibrations, dust, fumes, and gasses; and she is limited to unskilled work.

(Tr. 34.) Also, at step four the ALJ found Plaintiff could no longer perform any of her past relevant work. (Tr. 37.) At step five, the ALJ determined that in light of Plaintiff's RFC, age, education, work experience, and the Vocational Expert's ("VE") testimony, Plaintiff could perform jobs

2

existing in significant numbers in the national economy. (Tr. 37.) Those jobs included the representative occupations such as storage facility rental clerk, mail clerk, and assembler I. (Tr. 38.) The ALJ issued a decision that Plaintiff was not disabled under the Act. (Tr. 38.)

Plaintiff requested a review of this hearing decision on September 10, 2015. (Tr. 24.) This request was denied by the Appeals Council on December 16, 2016. (Tr. 1.) Therefore, the ALJ's decision dated July 22, 2015, became the final decision of the Commissioner. Plaintiff then brought the instant suit before this Court to challenge the Commissioner's decision, and this case is now ripe for judicial review pursuant to Section 205(g) of the Act, 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Here, Plaintiff presents two arguments purporting to show error in Defendant's decision, both of which related to the ALJ's RFC analysis and finding. When reviewing a Social Security disability determination, a reviewing court must "uphold the determination when an [Administrative Law Judge ("ALJ")] has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted). In reviewing the record for substantial evidence, the Court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ

as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (brackets, citation, and internal quotation marks omitted).

In considering an application for disability benefits, an ALJ uses a five-step sequential process to evaluate the disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016). "Satisfying step 3 warrants an automatic finding of disability, and relieves the decision maker from proceeding to steps 4 and 5." Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 659 (4th Cir. 2017) (citing 42 U.S.C. § 404.1520(d); see also Sullivan v. Zebley, 493 U.S. 521, 532 (1990)).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four." Lewis, 858 F.3d at 861. Here, the ALJ assesses the claimant's RFC to determine what is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. Id. § 416.945(a)(1); § 404.1520(a)(4)(iv).

> In making this assessment, the ALJ must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations. Only after such

4

a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work.

Monroe, 826 F.3d at 179 (citations and quotations omitted). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862. It is well-settled law that the ALJ must "show your work" in the RFC analysis. Patterson, 846 F.3d at 663 (holding the ALJ's lack of explanation regarding the plaintiff's severe mental impairments requires remand).

After assessing the claimant's RFC, the ALJ continues with the fourth step, where the claimant must establish she is unable to perform past work. Lewis, 858 F.3d at 862; Mascio, 780 F.3d at 635. If the claimant meets her burden as to past work at step four, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting

20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id. Lewis, 858 F.3d at 862 (citations and quotations omitted). If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

### III. ANALYSIS

Plaintiff asserts two assignments of error in Defendant's disability decision: (1) the ALJ did not give a complete function-by-function analysis of Plaintiff's mental functioning, thus failing to make a complete finding as to Plaintiff's RFC; and (2) the ALJ failed to provide sufficient reasons for rejecting the opinions of Dr. Wilds and Scott Trotter, who was Plaintiff's "treating therapist." (Doc. No. 7, pp. 16-17.) The Court addresses these in turn.

#### A. Plaintiff's Mild Limitations

Plaintiff spends the bulk of her argument asserting the ALJ failed to consider all of Plaintiff's impairments, including severe and non-severe, when determining her RFC. Specifically, Plaintiff contends the ALJ's RFC failed to adequately assess Plaintiff's mild limitations on her activities of daily living; ability to maintain social functions; and ability to maintain concentration, persistence or pace. Plaintiff contends that Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), and the later-decided Reinhardt v. Colvin, No. 3:14-cv-488, 2015 WL 1756480 (W.D.N.C. April 17, 2015), support remand here.

In Mascio, the Fourth Circuit held that remand may be appropriate where "'an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" 780 F.3d at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)); Reinhardt,

2015 WL at *3 (". . . Mascio clearly imposes on the Commissioner a duty to explain why such mild mental health impairments found at step two do not translate into work-related limitations when plaintiff's RFC for work is considered."). In response, Defendant contends the ALJ provided sufficient explanation for his RFC finding, which are consistent with the Mascio and Reinhardt requirements. The Court agrees with Defendant.

In step two, the ALJ noted, "[T]he overall records shows no more than mild limitations in activities of daily living, social functioning, and concentration, pace or persistence." Substantial evidence before the ALJ supports the conclusion that Plaintiff's activity level was inconsistent with a severe mental impairment, including evidence that Plaintiff went on multiple family vacations, performed yoga exercises, and volunteered at her children's school.

Subsequently and *throughout* the ALJ's RFC analysis, the ALJ explained why he did not include any of these mild limitations in the RFC beyond restricting Plaintiff to unskilled work. The ALJ discussed Plaintiff's testimony regarding "focus," "concentration," and "strains to remain on task." (Tr. 34.) The ALJ continued to explain Plaintiff's testimony "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 34.) Later in the discussion concluding that the evidence did not support a serious cognitive impairment, the ALJ referred to treatment notes, which showed "reports of difficulties in concentration and focus throughout [Plaintiff's] recover, which I have accounted for in the RFC assessment." (Tr. 35.) The ALJ also noted therapy notes indicating Plaintiff "continued to work and volunteer despite her difficulties." (Tr. 35.). Substantial evidence before the ALJ supports this, including evidence of numerous vacations; activities such as camping, boating, and tubing; attending dinners and parties; and serving in various volunteer

7

leadership capacities. (Tr. pp. 840-895.) The ALJ also discussed the treatment notes from Plaintiff's treating therapist, which "did not express any concern for cognitive impairment throughout her treatment. . . . There is no documentation showing any recommendation for a clinical evaluation regarding her memory or cognitive function." (Tr. 35-36.)

This RFC discussion sufficiently explains the basis for Plaintiff's capacity to perform relevant functions as well as why Plaintiff's mild mental health impairments found at step two do not translate into work-related limitations when Plaintiff's RFC for work is considered. Plaintiff has not shown that the ALJ failed to consider or explain contradictory evidence in the record. Accordingly, the Court finds both Mascio and Reinhardt to be distinguishable. In Reinhardt, the "ALJ never returned to any discussion of [the claimant's] mental impairments in his RFC findings and therefore omitted any mental impairment when creating an RFC." 2015 WL 1756480 at *4. Such is not the case here. In the present case, as explained above, the ALJ discussed a great deal of evidence relevant to Plaintiff's mental impairments and adequately assessed Plaintiff's "capacity to perform relevant functions [and] contradictory evidence in the record." Mascio, 780 F.3d at 636. Moreover, those findings are supported by substantial evidence.

In short, the ALJ concluded Plaintiff failed to satisfy her burden to prove she had functional limitations requiring any mental restriction in the RFC beyond the restriction to unskilled work. Knowles v. Berryhill, No. 1:17 CV 39, 2018 WL 1385410, at *7 (W.D.N.C. Mar. 19, 2018) ("[I]t is the claimant's burden to establish her RFC by demonstrating how those impairments impact her functioning. In considering a claimant's allegations of pain, an ALJ need not accept the allegations to the extent they are inconsistent with the available evidence.") (quotations and citations omitted).

Such conclusion is sufficiently explained and supported by substantial evidence. This assignment of error is overruled.

**B.     Opinions from Treating Physician and Therapist**

Next, Plaintiff contends the ALJ failed to "give good reasons for rejecting a treating physician's opinions . . . ." Plaintiff purports to support this assignment of error by arguing "[t]he ALJ does not explain why [a] treating physician's [Dr. Wilds] and a treating therapist's [MR. Trotter] opinions that do not have specific vocational limitations are only given little weight but a one-time consultative examiner's opinions that also does not have specific vocational limitations are entitled to significant weight." (Doc. No. 7, p. 17.) Plaintiff's arguments essentially ask this Court to reweigh the evidence and credibility of the testimony, which the Court cannot do. Hancock, 667 F.3d at 472 ("'[W]e do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ.'" (quoting Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005)).

Moreover, substantial evidence supports the ALJ's decision. The treating source rule requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. § 416.927(c). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. Id. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. § 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in detail, a treating source's opinion, like all medical opinions, deserves deference only if well supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. See 20 C.F.R. § 416.927(c)(2)–(4).14 "[I]f a physician's opinion is

not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); see also Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (noting that "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."). When declining to accord a treating source controlling weight, an ALJ must articulate "good reasons" for doing so. 20 C.F.R. § 416.927(c).

Here, the ALJ both acknowledged "a letter submitted by Dr. Wilds," (Tr. 37), and "[h]er therapist, Mr. Trotter."[2] (Tr. 35-36.) *Immediately* following the ALJ's noted decision to give little weight to Dr. Wilds' letter opining that Plaintiff would not be able to work full time, the ALJ explained "a treating physician's medical opinion" that a claimant is "unable to work" are "not medical opinions." (Tr. 37.) In addition, in a lengthy paragraph, the ALJ further described that Mr. Trotter's "descriptions are unspecific and do not assess the claimant with work-related limitations aside from broadly speaking of struggling with requirements 'mentally, emotionally, physically and socially.'" (Tr. 37.) Accordingly, the ALJ articulated clear reasons for assigning little weight to their medical opinions. Finally, the ALJ explained the basis for his decision to give "significant weight to the opinions of consultative physician Dr. Huynh," (Tr. 36.), and Dr. Huynh's opinion relied on and is supported by substantial record evidence. This assignment of error is overruled.

---

[2] The Court acknowledges the ALJ later referenced Mr. Trotter as "Dr. Trotter," (Tr. 37); however, the Court concludes such error is harmless.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 6) is DENIED, Defendant's Motion for Summary Judgment (Doc. No. 8) is GRANTED, and the Commissioner's decision is AFFIRMED for the reasons stated herein.

IT IS SO ORDERED.

Signed: March 22, 2018

Frank D. Whitney
Chief United States District Judge